NATIONAL LABOR RELATIONS
BOARD
v.
MOYER & PRATT, Inc.
No. 84, Docket 22808.

United States Court of Appeals
Second Circuit.

Argued Nov. 12, 1953.

Decided Dec. 8, 1953.

George J. Bott, David P. Findling, A. Norman Somers, Frederick U. Reel, and Wiley M. Craft, Washington, D. C., for petitioner.

Bond, Schoeneck & King, Syracuse, N. Y., Lyle W. Hornbeck, Syracuse, N. Y., for respondent.

Before SWAN, FRANK and MEDINA, Circuit Judges.

FRANK, Circuit Judge.

The facts, so far as not here stated, will be found in the Board's decision and order reported in 103 N.L.R.B. No. 6 and in its Decision and Certification reported in 100 N.L.R.B. 190.

■ 1. The Board here held that the company was guilty of an unfair labor practice in that it refused and continued to refuse to bargain collectively with a union previously certified by the Board after an election by secret ballot. The sole issue here is whether the Board had properly certified the union.[1]

2. The company had filed objections to the conduct of the election. The Regional Director then, pursuant to the Board's Regulation, C.F.R. 102.61, after an investigation, made a written report on these objections, to which the company filed exceptions together with affidavits in support of them. The Board then found as follows:[2]

"The employer's objections do not raise material or substantial issues with respect to the election for the following reasons: It appears that the election was conducted on the Employer's premises, in a garage adjacent to the plant; that in going to the poll a number of employees used an outside path leading from the plant to garage; that the path followed the general contour of a paved road leading to the plant; that during the first half hour of the election a Union official was stationed in his car at a point on said paved road, which was about 10 feet from the path and about 125 feet from the polling place. The Employer alleges, and we shall assume arguendo, that while at the above mentioned point, the Union representative spoke to employees who were on their way to vote. Because of this alleged conduct, the Employer immediately complained to the Board agent conducting the election, who then told both parties not to engage in conduct which would give rise to the filing of objections. Thereafter, the Union official returned to the location described above and resumed his activity until a half hour later when he drove his car to another location on a hill 100 yards from and overlooking the polling place, from which he waved to employees.

"The Employer's basic objection is that the Union official electioneered on a road within the 'polling area' and thereby coerced the employees and interfered with the holding of a 'free and fair' election. Upon the entire record, and especially the following circumstances we find no merit to this objection: (1) No claim is made that the Union official made any coercive statements or wilfully violated any instructions of the Board agent; (2) the Union official was stationed in his car on a highway 125 feet from the polling place; and (3) his proximity to the private path used by the employees did not involve inescapable personal contact with them. We accordingly find that conduct of the Union official did not interfere with the election or impair the free choice of the employees therein. The Employer's exceptions to the Report on objections are hereby overruled."

The Supreme Court has instructed us that the establishment of procedure and safeguards to insure fairness in elections is entrusted to the Board "with a wide degree of discretion". N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322. Generally apposite here is this comment by

1. Of the certification there is no direct review. An attack on the election can be made only as part of the record in the unfair labor practice proceeding. See

Section 9(d) of the National Labor Relations Act, 29 U.S.C.A. § 159(d).

2. 100 N.L.R.B. No. 190.

Judge Parker: "For the courts to substitute their judgment for that of the Board in such matters would be for them to undertake an impossible task and entirely to misconceive their function under the statute."[3]

██ The Board's decisions in this realm show that it has exercised its discretion on a case-to-case basis, a course we think proper. Viewing the record as a whole, we cannot say that the Board acted beyond its powers.[4]

Enforcement will be ordered.

MEDINA, Circuit Judge (concurring).

I concur but with some misgivings. That the Board has been given a wide discretion in its supervision of elections under the Act seems wise and is probably all but indispensable, if a fair and proper regard is to be had for the great variety of local conditions under which these elections are held. There is substantial evidence to support the findings; and in all probability the reference to the 100 foot rule which obtains under the New York Election Law, McK.Consol. Laws, c. 17, Sections 161, 193, subds. 2, 4, was brought in after the event as a sort of make-weight. That it has no bearing on the case seems evident, as the elections conducted under the Act are of a character essentially different from those to which the New York statute is applicable, and one of the important safeguards provided in the statutory scheme under consideration is the exercise by the Board of a discretion which takes account of the particular circumstances under which each of these elections is held. Giving any consideration whatever to such rules of thumb may well cause confusion and possible injustice, with little or no benefit to employer or employee.

When Gozier, a representative of the employer, complained to the Board agent the record shows that the Board agent "sent for the Union Representative and, having both the Union Representative and Mr. Gozier before her, stated to both of them in substance that it was up to both parties to conduct themselves so there would not be any grounds for valid objection to the election." This was a strange procedure, as no suggestion was then or later made that the employer had done anything whatever to coerce or influence the employees. Its conduct had evidently been beyond reproach. This remark by the Board agent has been interpreted as an indication that she had considered the complaint, made whatever inquiry was necessary, and had reached the conclusion that there had been no improper conduct by the union representative. But it surely could have been interpreted differently by those who were participating in the election, especially as the union representative returned at once to, and remained for some little time in the position where he had previously been seen in his car talking to the men as they came out of the plant and proceeded up the path to the voting place. Perhaps the comment was intended as some evidence of impartiality. If so the choice of expression was, to say the least, unfortunate and misleading. But this falls short of any showing that the Board failed to exercise its discretion.

3. N. L. R. B. v. National Plastic Products Co., 4 Cir., 175 F.2d 755, 758. See also N. L. R. B. v. Huntsville Mfg. Co., 5 Cir., 203 F.2d 430, 434.

4. By way of answer to one of the company's contentions, the Board quotes the following from its opinion in the certification proceedings: "While it may be true that the Board agent failed, at the Employer's request, to establish specifically electioneering limits, we think it clear that he regarded the Union officials' station—125 feet from the polls—to be outside the prohibited area. Otherwise, when he was apprised of the location of the Union official and spoke to both parties with respect to general standards of conduct, he would have instructed the Union official to leave the point in question."