## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## GLEN RAVEN KNITTING MILLS, Inc., Respondent.

### No. 7215.

United States Court of Appeals
Fourth Circuit.

Argued June 15, 1956.
Decided July 30, 1956.

Robert Cohn, Atty., National Labor Relations Bd., Winston-Salem, N. C. (Theophil C. Kammholz, Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Atty., National Labor Relations Bd., Washington, D. C., on brief), for petitioner.

Whiteford S. Blakeney, Charlotte, N. C. (J. W. Alexander, Jr., Charlotte, N. C., on brief), for respondent.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and BARKSDALE, District Judge.

SOPER, *Circuit Judge.*

This petition was filed by the National Labor Relations Board to secure the enforcement of an order whereby it directed Glen Raven Knitting Mills, Inc., amongst other things, to bargain collectively with American Federation of Hosiery Workers, an AFL–CIO union, as the representative of the employees organized in a unit consisting of the company's full-fashioned hosiery knitters in its plant at Altamahaw, North Carolina. The refusal to bargain and other actions complained of as unfair labor practices were admitted. They were taken by the company as a method, approved in Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 154, 61 S.Ct. 908, 85 L.Ed. 1251, for securing a decision of the courts upon the only disputed issue in this case, that the decision of the Board setting up the knitters as a separate bargaining unit was not only arbitrary and capricious but also in disregard of the express provisions of the National Labor Relations Act.

The company's plant produced ladies full-fashioned hosiery and had a complement of 525 employees of whom approximately 182 were engaged in full-fashioned knitting. In addition, the operations included seaming, inspecting, mending, dyeing, boarding, pairing, transferring, folding and shipping, each operation being essential to the production of the goods and calling for the exercise of a special skill.

In 1951, the union attempted to organize the plant as a whole and on April 16 of that year the Board conducted a consent election in which the bargaining unit was composed of all the production and maintenance workers and excluded office, clerical and supervisory employees; but the union failed to win a majority of the votes. Subsequently, in August, 1954 the union again sought to gain a foothold in the plant. It was its intention to apply to the Board to certify all the production workers as an appropriate bargaining unit, if it should be able to persuade a majority of them to join. In the literature which it circulated it appealed to the employees on the ground that the "hosiery workers, knitters, loopers, seamers, fixers, menders, boarders,

pairers, etc." all spoke the same language and had the same problems which would be taken care of if they were left to the union. This attempt to organize the whole plant also failed and the union then concentrated its efforts upon the knitters and secured a majority of them. Thereupon it applied for and obtained a determination of the Board that the knitters alone constituted an appropriate bargaining unit and an election was held in which a majority of the group voted in favor of the union and it was accordingly certified. Following the certification the company refused to bargain with the union and performed the other actions on which the petition for enforcement is based.

■ The law applicable to the situation is not in dispute. It is provided by § 9(b) of the statute, 29 U.S.C.A. § 159 (b), that the Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining shall be the employer, craft unit, plant unit or sub-division thereof; and the courts have given a liberal interpretation to this provision and have held that the Board's decision is not subject to review unless it is unreasonable and arbitrary. Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 152, 61 S.Ct. 908, 85 L.Ed. 1251; Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040; N. L. R. B. v. Williams Lumber Co., 4 Cir., 195 F.2d 669, 671; Foreman & Clark, Inc. v. N. L. R. B., 9 Cir., 215 F.2d 396, 405 and 406; Harris Langenberg Hat Co. v. N. L. R. B., 8 Cir., 216 F.2d 146, 148. If, however, there is an abuse of discretion on the part of the Board, the courts have held that its decisions are reviewable, and it is now expressly so provided in the Administrative Procedure Act, 5 U.S.C.A. § 1009(e). Furthermore, the power of the Board is limited by the express statutory provision in the Labor Act that, in determining whether a unit is appropriate, the extent to which the employees have organized shall not be controlling. 29 U.S.C.A. § 159(c) (5). We are called upon to decide whether the Board exceeded its powers in the instant case.

■ Obviously it is to the advantage of the employees in general that all of them shall have the right to participate in decisions affecting their interests through representatives of their own choosing and that this right is jeopardized if a selected group of employees, without whom the business cannot be carried on, is empowered to bargain separately for its own interests with the possibility of an ensuing strike regardless of the wishes of the workers in other sub-divisions of the enterprise. Unity of interest, common control, dependent operation, sameness in character of work and unity of labor relations have led the Board and the courts in many cases to approve the inclusion in a bargaining unit as many employees as possible who have a common interest. See Pittsburgh Plate Glass Co. v. Labor Board and N. L. R. B. v. Williams Lumber Co., supra.

■■ The Board seeks to justify its decision on the ground that the knitters are the most highly skilled and most thoroughly trained of all the workers in the plant and that they operate, under their own supervisors, more complicated and costly machines than the other employees and, therefore, they constitute an appropriate unit for separate bargaining. In general terms, the Board says that the knitters are a functionally distinct and homogeneous group of highly skilled employees with interests separate and apart from those of the other employees. This, however, is not the whole story. It is true that the knitters are a distinct and homogeneous group in the same sense as the workers in every other department of the plant, but the record does not bear out the assertion that the interests of the knitters are separate and apart from those of the other employees.

On the contrary the testimony shows that the knitters are entitled to no greater employee benefits and are subjected to the same policies of management as the other employees, and that all of the work in the plant is performed under a single superintendent. In short, the interests of all the workers are intertwined and interdependent.

The record does not show affirmatively that the knitters are in need of advantages of union organization which they could not obtain by the organization of all the production workers in a single unit. Indeed, the contrary seems to be the fact because for more than twenty-five years it has been the policy of the national union of hosiery workers, which is now before this court, with negligible exceptions, to organize all production and maintenance workers in a hosiery mill in one plant-wide inclusive unit. In this particular instance the union had no thought that the knitters were in need of a separate organization, but resorted to this plan only when the larger object proved unattainable. In other words, the union sought the designation of the knitters as an appropriate bargaining unit because only the knitters had been organized; and when the Board certified this group it gave its sanction to a purpose that conflicts with the terms of the statute. It is no answer to say that the knitters as a group possess certain characteristics that warrant their certification as a separate unit; and therefore, the Board acted within the scope of its authority. We may not isolate these circumstances from the rest of the case and deal with a purely theoretical situation. We must consider the evidence as a whole, and when this is done there can be no reasonable doubt that the Board's action was controlled by the extent to which the employees of the company had been organized. Its order, therefore, is not entitled to enforcement and its petition must be dismissed.

Petition dismissed.