NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BELCHER TOWING COMPANY, Respondent.

No. 18288.

United States Court of Appeals
Fifth Circuit.
Nov. 22, 1960.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick Manoli, Associate Gen. Counsel, Stuart Rothman, Gen. Counsel, Rosanna A. Blake, Donald J. Bardell, Attys., N. L. R. B., Washington, D. C., for petitioner.

Erle Phillips, Fisher, Phillips & Allen, Atlanta, Ga., for respondent.

Before RIVES, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This petition to enforce an order of the National Labor Relations Board draws in question the correctness of the Board's designation of the bargaining unit and of its ruling on eligibility of employees to vote in a representation election.

█ It is not disputed that the respondent refused to recognize the union as the bargaining representative and that it refused to enter into collective bargaining with it. It is clear that, unless these refusals were justified on the basis of respondent's contentions, they amounted to a violation of Section 8(a) (5) and 8(a) (1), of the National Labor Relations Act, 29 U.S.C.A. § 158 (a) (1, 5).

The respondent's refusals were based on two contentions: (1) that the bargaining unit was not an appropriate bargaining unit as contemplated under the Act because it arbitrarily excluded the six tugboat captains, and (2) the board improperly sustained challenges to four ballots, which, if counted, might have changed the result of the election.

Respondent is engaged in the transportation of petroleum products along the southeast coast of Florida and in connection therewith operates six tugboats. On January 19, 1959, the Board conducted an election of a unit consisting of all unlicensed tugboat employees exclusive of "captains" and supervisors as defined by the act. The total number of ballots cast in the election was eighteen; eight ballots were cast in favor of the union and six against it; four were chal-

lenged by the union and these challenges were sustained by the Board, establishing the union's victory in the election. Thereafter, upon request of the union to enter into collective bargaining, the respondent refused, relying upon its contention that the election was invalid on the grounds above set out.

Although the respondent itself did not take a firm position, at the time of the election and the Board's determination of the appropriateness of the bargaining unit, that the captains should be included in the unit, it did preserve its right to urge this point and it now, as it did in the hearing before the Board on the unfair labor practice charge, urges that the exclusion of the captains was not justified. This it says is so because each of respondent's tugboats usually carries a crew of three, none of whom is "licensed" in the sense that he has a captain's license and the captain does pretty much everything on board that is done by the other members of the crew. It is undisputed, however, that the captain is actually in charge of the tugboat and that his decisions and orders must, therefore, occasionally be inconsistent with what the other members consider to be to their best interest.

■ This court has repeatedly said that Congress has authorized the Board to make the determination as to what is an appropriate bargaining unit and that in the making of this determination a wide discretion has been vested in the Board. N. L. R. B. v. White Construction & Engineering Co., 5 Cir., 204 F.2d 950; N. L. R. B. v. Smythe, 5 Cir., 212 F.2d 664; N. L. R. B. v. West Texas Utilities Co., 5 Cir., 214 F.2d 732. Clearly the Board here might properly have included these captains in an appropriate bargaining unit, but just as clearly we must refrain from interfering with the Board's determination that the unit without the captains is an appropriate bargaining unit.

The second attack by respondent on the validity of the representation proceedings raises a somewhat more difficult question. However, the Board's decision relating to the exclusion of four employees from the balloting is based on findings of fact which we do not feel it proper to overturn, since we cannot say that these findings are not based on substantial evidence on the record as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456.

One of the employees whose ballot was challenged, a part-time employee named Sharpe, was found by the Board not to have sufficient continuity of employment as to have more than "little, if [any] community interest with the regular full-time employees." [1]

1. The parties stipulated as to Sharpe's employment as follows:

"Sharpe was first employed by the [respondent] as a mate and deckhand in August 1957. He was employed on a sporadic, part-time basis from August 1957 through the pay period ending August 20, 1958, this latter date being the date of the Board's Decision and Direction of Election. Inspection of the [respondent's] pay records revealed that Sharpe was paid at the rate of $12.00 per day from the time that he was originally hired through the payroll period ending August 20, 1958. Regular full time employees are paid on a monthly basis. Furthermore, the records show that Sharpe worked a total of only forty-three (43) days at various, separated times from the time of the original hire to the end of the calendar year 1957.

"During the year 1958, up to August 20, Sharpe worked a total of twenty-four (24) days at the following times:

"Eight (8) days during the period ending May 28, 1958

"Eight (8) days during the period ending July 18, 1958 and

"Eight (8) days during the period ending August 20, 1958.

"There was a hiatus of nine days from the time Sharpe was paid a $12.00 daily rate until he was employed as a regular salaried employee on August 20, 1958."

It must be borne in mind that, without contest, the Board provided that employees who worked during the payroll period immediately preceding August 20, 1958 were to be considered employees.

Although the record also discloses that 9 days after the cut-off date Sharpe did become a full-time employee, we do not feel that this Court can find clearly erroneous the Board's decision that Sharpe had no community of interest with the regular employees in working conditions, hours and rates of pay, in light of the fact that he had worked only 43 days the previous year, and only 24 days in 1958.

The two employees, Siefert and Lawson, whose ballots were successfully challenged, were college students at the University of Florida, Siefert having worked two previous summers and Lawson having worked only during the current summer vacation. These summer employees performed identical services with the other members of the bargaining unit. However, they were paid $240 and $225 monthly respectively as compared to monthly pay of $300 to $365 for regular all year around deckhands.[2]

We have recently said in Shoreline Enterprises of America, Inc. v. N. L. R. B., 5 Cir., 262 F.2d 933, 944, 69 A.L.R.2d 1174: "Eligibility to vote depends on whether an employee is sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a bargaining agent." Neither the Board nor the general counsel takes the position that under no circumstances can college students holding summer employment be properly considered as members of a bargaining unit. See Atlantic Refining Co., 106 N.L.R.B. 1268. However, we think the Board has the responsibility to determine whether there is reasonable likelihood that such employees will eventually become sufficiently identified in employment to have a community of interests with the others who are properly members of the bargaining unit. We think the record here supports the finding of the Board that Siefert and Lawson did not properly come within this class. While there is no indication that either of these employees did not consider his summer employment as a serious business, the record is silent as to any circumstance from which the Board would be required to infer that there was a likelihood that either of the men would continue in the company's employment either in succeeding summers or after graduation. Again, as in the case of Sharpe, it developed that several months after the cut-off date, Siefert did, in fact, drop out of college and go to work for respondent. This, however, we think cannot color the picture as it stood on the critical date.

We conclude, therefore, that appellant's attacks on the validity of the representation proceedings cannot prevail. It follows that the Board's finding that respondent was guilty of violation of Sections 8(a) (5) and 8(a) (1) must be sustained.

Enforcement is, therefore, ordered.

2. The following facts were stipulated as to these two employees:

"Both * * * are college students and regularly attend the University of Florida. Seifert has been employed by [respondent] as a summer replacement deckhand for the past three summer seasons including this season [1956, 1957, and 1958]. Lawson has been employed as a replacment deckhand during the 1958 summer season only. During the 1956 and 1957 seasons Siefert was paid on a weekly basis but during the 1958 summer season both were paid on a monthly basis. Siefert received $225.00 monthly and Lawson received $240.00 per month as compared to monthly rates of $300.00 to $365.00 paid to 'year-round' deckhands. Neither of these men received a paid vacation as do the other employees of the Employer. Both were hired as summer replacements for regular employees on vacation during this period. However, the [respondent] has informed both of these men that there will be jobs for these men next summer if they desire to return.

"[Respondent's] policy is to advance men from within the organization and eventually if Siefert and Lawson remain, after completing their college education, they may be able to obtain more advanced jobs with the [respondent]."