NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

The JOCLIN MANUFACTURING COMPANY, Respondent.

No. 154, Docket 27675.

United States Court of Appeals Second Circuit.

Argued Dec. 5, 1962.

Decided Jan. 30, 1963.

Rehearing Denied March 1, 1963.

Warren M. Davison, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison and Peter M. Giesey, Washington, D. C., Attys., on brief), for petitioner.

Robert B. Snow, Jr., Wiggin & Dana, New Haven, Conn., for respondent.

Before LUMBARD, Chief Judge, and SWAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

The National Labor Relations Board seeks enforcement of an order, 137 NL RB No. 23, determining that respondent Joclin Manufacturing Company, which is engaged in the manufacture and interstate sale of plastics and related products at Wallingford, Conn., violated § 8(a) (1) and (5) of the National Labor Relations Act by refusing to bargain with United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO, hereafter the Union, which had been certified after a consent election as the bargaining representative of a unit of Joclin's employees. The sole issue is the validity of the certification. Finding material error in the Board's disposition

of challenges to certain ballots, we deny enforcement, vacate the order, and remand for further appropriate proceedings.

Most of the facts were stipulated. On June 12, 1961, the Union filed a representation petition seeking designation as the bargaining representative of Joclin's production and maintenance employees. Soon thereafter Joclin and the Union executed a "Stipulation for Certification upon Consent Election", later approved by the Board's Regional Director. It defined as eligible voters "those employees included within the Unit described below, who were employed during the payroll period indicated below, including employees who did not work during said payroll period because they were ill or on vacation or temporarily laid off * * *, but *excluding* any employees who have since quit or been discharged for cause * * *," and provided that "At a date fixed by the Regional Director, the parties, as requested, will furnish to the Regional Director an accurate list of all the eligible voters, together with a list of the employees, if any, specifically excluded from eligibility." The election was fixed for July 7, 1961, with the week ending June 16, 1961, as the "Payroll Period for Eligibility". The appropriate collective bargaining unit was described as "All production and maintenance employees, excluding office, clerical and professional employees, guards and supervisors as defined in the Act."

The tally of ballots cast in the election showed 17 undisputed votes for the Union, 14 against, and 9 challenged. Since the challenged ballots were sufficient to affect the result, the Regional Director proceeded to conduct an investigation, obtaining information about the nine challenged voters from the Company and from the voters themselves. Joclin took the position that the votes of seven employees—D'Amico, Bianco, DeTour, Rosania, Cella, Stupski, and Ursini—should be counted, and that those of two—Rollins and Palukis—should not. The Union claimed that the seven should not be counted; the challenges to Rollins and Palukis were made by the Board Agent on the ground that their names were not on the list submitted by the parties. The Regional Director filed a report recommending that the challenges to the ballots of D'Amico, Bianco and DeTour, and also to those of Rollins and Palukis, be overruled, but that the challenges to the ballots of Rosania, Cella, Stupski and Ursini be sustained. Joclin excepted to the latter recommendation and also to the overruling of the challenges with respect to Rollins and Palukis; the Union did not except to the overruling of its challenges with respect to D'Amico, Bianco and DeTour, and the validity of these three votes was thus no longer contested. As to the six ballots that remained in issue the Board, on October 17, adopted the Regional Director's recommendations, finding "that the Employer's exceptions do not raise material and substantial issues". The revised tally showed 19 votes for the Union and 17 against; this total, of course, included the questioned votes of Rollins and Palukis and did not include those of Rosania, Cella, Stupski and Ursini. On October 30 the Regional Director certified the Union. Taking the position that the certificate was invalid, Joclin refused to bargain. Charge by the Union, complaint by the General Counsel, hearing, Intermediate Report upholding the complaint, exceptions by the Company, affirmance by the Board, and petition for enforcement followed in due course.

■ Although § 9(c) provides that upon the filing of a representation petition, as therein described, "the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice", the statute does not in terms require a hearing with respect to the *results* of an election; it says simply, "If the Board finds * * * that such a question of representation exists, it shall direct an election by secret ballot and shall certify the

results thereof." Normally there cannot be judicial review either of the decision to hold an election or of the certification of its results. American Federation of Labor v. N. L. R. B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940); but cf. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). On the other hand, it is plain that when the Board has faulted an employer for refusing to bargain with a certified union, a reviewing court must consider not only claims of error of law and fact in the pre-election determination as provided in § 9(d), but other claimed errors of law underlying the certification, such as errors in the disposition of challenges to election ballots. See Administrative Procedure Act, 5 U.S.C. § 1009(e); Pittsburgh Plate Glass Co., v. N. L. R. B., 313 U.S. 146, 154, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N. L. R. B. v. Moyer & Pratt, Inc., 208 F.2d 624 (2 Cir., 1953); N. L. R. B. v. Glen Raven Knitting Mills, 235 F.2d 413 (4 Cir., 1956). It is not so clear what should be done in regard to disputed issues of fact concerning challenged ballots—issues as to which, in the absence of a hearing at some stage after the election, there will be no formal record for the court to review.

In N. L. R. B. v. Sidran, 181 F.2d 671, 673 (5 Cir., 1950), the Board accepted a Regional Director's election report which determined disputed issues of voter eligibility on the basis of an *ex parte* investigation, without giving the employer any "opportunity to be heard, to examine and cross-examine witnesses, or to produce any evidence in his own behalf which might have tended to impeach or contradict the facts found by the Regional Director as to the status of these challenged employees." The court held that such action deprived the employer of his constitutional right to a fair hearing, and invalidated the Board's finding that he had committed an unfair labor practice in refusing to bargain with the certified union. We are not required to consider whether something short of a complete "trial-type" hearing with respect to the certification might not fill the bill. See 1 Davis, Administrative Law Treatise, §§ 7.01–7.05 (1958). For the Board's Regulations now provide that "the Board may direct" such a hearing on exceptions to the Regional Director's report on challenged ballots "if it appears to the Board that such exceptions raise substantial and material factual issues." Reg. § 102.69 (e); see also § 102.69(c) and (d).[1] The Board properly has not contended either that the Regulations' use of the phrase "appears to the Board" makes its determination conclusive, see United States v. Laughlin, 249 U.S. 440, 39 S.Ct. 340, 63 L.Ed. 696 (1919),[2] or that their use of the verb "may" gives it an unfettered discretion to grant or deny a hearing, see Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 123, 46 S.Ct. 215, 70 L.Ed. 494 (1925); N. L. R. B. v. O. K. Van Storage, Inc., 297 F.2d 74, 76 (5 Cir., 1961). In consequence a court cannot properly enforce an order finding an employer guilty of an unwarranted refusal to bargain with a union certified

---

1. At the hearing on the unfair labor practice charge, Joclin endeavored to submit evidence as to the employment status of the six persons involved; the Trial Examiner excluded this on objection by the General Counsel, and Joclin made an offer of proof. The Board sustained the Examiner's ruling, adding that "no evidence not previously considered was offered" with a single immaterial exception. In view of the opportunity afforded by the Board's Regulations to seek a hearing on exceptions to the Regional Director's report in the certification proceeding, we agree that the Board need

not permit a second bite at the same apple in an unfair labor practice case relating to the certification; we are not required to decide what the rule would be if *no prior opportunity* were thus afforded.

2. The Board likewise does not contend that the consent election here was held under the procedure set forth in § 102.62 (a) of its Regulations, which, unlike that provided in § 102.62(b), makes the Regional Director's rulings final as to elections held thereunder. See Statements of Procedure, § 101.19.

in an election if it appears, with respect to challenges affecting the result, either that they were disposed of erroneously as a matter of law or that the employer raised "substantial and material factual issues" under the Regulations and was denied a hearing that he seasonably requested. Although we in no way criticize the Board's thus conditioning the right to a hearing on a showing that factual issues are "substantial and material"—a requirement not only proper but necessary to prevent dilatory tactics by employers or unions disappointed in the election returns—Joclin's showing as to this close election met that test.

■ With respect to Ursini, the Regional Director did not dispute the employer's version of the facts, namely, that Ursini had been hired with the understanding that he would spend 80% of his time in production work and 20% in maintaining company cars; that his production work was the same as that performed by other production employees; that he was the only employee doing car maintenance work; that, owing to an unexpectedly heavy amount of major repair work, he had spent 1201.6 hours on car maintenance and only 280.4 hours on production since September 1960; and that the car maintenance was done at a site where Ursini was the sole employee, in a town other than that where Joclin's plant is located.[3] The Regional Director excluded Ursini on the ground that he "is not primarily engaged in, and does not spend more than 50% of his time in performing duties similar to the employees in the requested unit", citing Denver-Colorado Springs-Pueblo Motor Way, 129 N.L. R.B. 1184 (1961). That case was rather plainly distinguishable since it related to an employee already represented in another bargaining unit of the same employer, to which she gave more than 50 per cent of her time, whereas Ursini worked alone when maintaining company cars. The unit described in the stipulation here was "All production and maintenance employees" without geographical restriction; Ursini was both a production and a maintenance employee, and the effect of the Regional Director's ruling was to disenfranchise him, quite needlessly and in violation of the direction that the Board shall "assure to employees the fullest freedom in exercising the rights guaranteed by this act", § 9(b). Apart from all this, the Board has just overruled Denver-Colorado Springs and reestablished the contrary rule of Ocala Star Banner, 97 N.L.R.B. 384 (1951), which Denver-Colorado Springs had previously overruled. Berea Publishing Co., 140 N.L.R.B. No. 55 (Jan. 7, 1963). The Board "now believe(s) that a dual-function employee devoting less than 51 percent of his time to unit work may have sufficient interest in the unit's condition of employment to be included in the unit." Id., sheet 5. Exclusion of Ursini's ballot was erroneous as a matter of law.

■ Although Rosania, whose ballot was also excluded upon the Union's challenge, had a full-time job with another employer, Joclin's submission with respect to him, made immediately after the election, was that "he was hired on a permanent basis for regular production work" early in June, 1961, and "is expected to work on a part-time basis indefinitely." The Regional Director found, without exception by Joclin, that in the five payroll periods beginning June 17 and ending July 15, Rosania averaged 24 hours a week, after which he worked one day, July 17, and was then laid off for lack of work in his department. Since Rosania had worked 30.4 hours during the agreed test week of June 16 and continued to work a substantial number of hours through the date of the election, he would seem, *prima facie*, to have been within the agreed group of employees and "sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a collective bargaining agent." Shoreline Enterprises

3. This last fact comes from the Regional Director's Report but is not disputed by Joclin.

of America, Inc. v. N. L. R. B., 262 F.2d 933, 944, 69 A.L.R.2d 1174 (5 Cir., 1959). What happened later "cannot color the picture as it stood on the critical date", N. L. R. B. v. Belcher Towing Co., 284 F.2d 118, 121 (5 Cir., 1960), unless there is a basis for believing that the later developments were contemplated before. The Regional Director drew a conclusion to that effect from Rosania's having "told a Board Agent that he never took the job seriously; that when he was hired he was told it was part-time and that they would use him if they needed him and would call him," [4] and from his then having "refused to discuss the matter further, saying that he would be in trouble with his Employer if he did and that all information should be obtained from the Employer." Joclin's exceptions contended that there was nothing "casual or temporary about Rosania's employment", alleged that his lay-off was due only to his being lowest in seniority, attacked the propriety of considering his statements to the Board agent, and requested "that the challenge should be overruled or that the substantial and material factual issues be resolved in a full hearing." Recognizing that the need for expedition in certification matters justifies the Board in imposing "reasonable conditions to the allowance of a hearing on objections", N. L. R. B. v. O. K. Van Storage Inc., 297 F.2d 74, 76 (5 Cir., 1961), we think a case like Rosania's—an employee who was *prima facie* eligible and is sought to be disqualified because of developments after the election and an alleged mental attitude disclosed in a private interview with a Board agent—comes squarely within the Board's Regulations and requires a hearing upon the Company's request.

 The Board also erred in overruling the challenges with respect to Rita Rollins and Isabelle Palukis. These ladies, who work together in a "crib" located in the middle of the production area but screened off from it, receive and issue all production materials, maintain records and furnish reports of in-process and finished goods, take physical inventories on a quarterly basis, maintain production, cost, sales and shipment records, and prepare weekly labor reports. They are supervised by a Cost Supervisor who is in the office clerical department, rather than by the Production Manager. Joclin estimated that 70% to 80% of their time was spent on clerical work, the remainder on issuing and receiving materials. The Regional Director held that their votes should be counted because, to the extent that they were not production workers, they were "plant clericals", and "inasmuch as only office clericals have been excluded from the unit, plant clericals are included, though not specifically identified by that category."

If this issue arose on a challenge to the Board's independent determination of a proper bargaining unit, we should be no more disposed to interfere with a decision to place these two workers within the unit than was the First Circuit in N. L. R. B. v. Clarostat Mfg. Co., 216 F.2d 525 (1954), on which the Board relies. But here the Board was not making an independent determination; it was construing a contract. There may, of course, be situations where the agreement reached between company and union as to the appropriate bargaining unit should not be enforced by the Board because it improperly disenfranchises employees, see Shoreline Enterprises of America, Inc. v. N. L. R. B. supra, 262 F.2d at 944–946; but nothing would indicate this to be such a case, and in any event it is the agreement on which the Board is relying. The language on its face—"excluding office, clerical and professional employees"—does not suggest that "plant clericals" were to be included; since no words of exception would have been needed to exclude "office clericals" from the category of "production and maintenance employees", the

---

4. The Director also noted that "the Company is unable to state when he will be employed again in the foreseeable future, although late August was stated as a possibility."

inference from the specific exclusion of clericals and the comma between "office" and "clerical" [5] would be that even plant clericals were intended to be excluded from the bargaining unit.[6] Certainly the stipulation did not clearly *include* plant clericals in the unit; if it was ambiguous, evidence of practical construction would be of moment. Joclin's exceptions alleged that in an earlier election the parties had classified Palukis as an "office clerical", that neither the employer nor the Union had ever claimed she was eligible, and that the Union's claim of Rollins' eligibility, advanced after the election, rested on the fact that she issued a particular type of production material different from the types handled by Palukis. The exceptions concerning these two employees concluded with the statement: "If further evidence is desired, it is submitted that this factual issue should be resolved in a full hearing", otherwise "the challenges to these votes should be sustained." We agree.

 This leaves for consideration the votes of Cella and Stupski, two local college students, whose ballots were excluded by the Regional Director. The employer's submission was that Cella had worked substantially full time from early June until mid-September 1960; that he expected to do the same during 1961 and had done so from the week ending June 10, 1961; that Stupski was employed on a full time basis for a period expected to exceed three months in 1961 and "it is anticipated that he will return during successive summers to work for a similar period of time." The Regional Director, stating that "summer students are held by the Board to be ineligible absent a reasonable expectancy of forthcoming regular employment", found that Cella and Stupski had none. This is indeed the test that the Board now applies to summer employees in its own determination of a bargaining unit. See Brown-Forman Distillers Corp., 118 N. L.R.B. 454 (1957), overruling—as was made clear in Belcher Towing Co., 122 N.L.R.B. 1019, 1020 n. 3 (1959)—such decisions as Atlantic Refining Co., 106 N.L.R.B. 1268, 1271–72 (1953), which had held that a reasonable expectancy of reemployment in succeeding summers sufficed to render college students eligible to vote. Although the Court of Appeals opinion which granted enforcement to the Board's Belcher Towing decision apparently assumed that the "succeeding summers" test still applied, 284 F.2d 118, 121 (5 Cir., 1960), we do not take this as a rejection of the Brown-Forman rule. But here again the Board failed to recognize that the considerations applicable when it itself defines a bargaining unit, as in Brown-Forman and Belcher Towing, may not be the same as those that control when it interprets a stipulation for a consent election, as here, where the primary question is what the parties meant. Since the stipulation literally provided for the inclusion of all workers on the payroll during the test period except those expressly excluded, and college students were not so excluded, it can be argued that, whether or not the Regional Director might properly have insisted on an amendment of the stipulation to exclude them, it was error to apply the Brown-Forman rule to the stipulation as written. However, we think Board policy on this issue to be sufficiently crystallized so that, unless the stipulation provides explicitly for the eligibility of summer employees who have no expectation of forthcoming permanent employment, the agreement should be construed as incorporating the

5. The stipulation thus differs from the Union's petition which answered the item "Description of Unit Involved":
 "*Included*
 "All production and maintenance employees
 "*Excluded*
 "Office clerical, professional employees, guards and supervisors as defined in the Act."

6. It may be noted that, in the cases cited to us by the Board, detailed definitions were evidently thought needed to effect the incorporation of "plant clericals" in a unit with production workers. See N. L. R. B. v. Clarostat Mfg. Co., supra, 216 F.2d at 526; Girton Mfg. Co., 129 NLRB 650, 660 (1960); Florida Tile Industries, Inc., 130 NLRB 897, 900 (1961).

Board rule and excluding such employees. There was thus no error in the ruling as to Cella and Stupski.

Since Joclin has shown errors of law or factual issues entitling it to a hearing under the Board's Regulations with respect to four employees in an election reported to have been won by only two votes, we deny enforcement, vacate the order and remand to the Board for further appropriate proceedings. We see nothing that would prevent the Board, if so advised, from determining that, in view of the lapse of time, a new election, with a more clearly defined bargaining unit, to be held on consent or other appropriate proceedings, would serve the purpose of the statute more fully than further inquiry into this old and at best exceedingly close one.

ON PETITION FOR REHEARING.

PER CURIAM.

The National Labor Relations Board has petitioned for rehearing on the ground that our discussion of the challenges with respect to Rita Rollins and Isabelle Palukis relied to some extent on the presence of a comma between the words "office" and "clerical" in the stipulation for an election. The stipulation was so printed in the Board's brief and in the joint appendix but the Board now advises us that the comma was a typographical error. Apart from the comma, we would still regard the stipulation as sufficiently ambiguous with respect to Rollins and Palukis to warrant the employer's request to submit extrinsic evidence, although this will have to be more probative than if the stipulation had read as we were told. Remand is required in any event since even if the votes of Rollins and Palukis should prove to have been properly counted, the counting of Ursini's ballot, which was erroneously excluded, and of Rosania's, which a hearing may show to have been, might produce a tie.

The opinion is modified to the extent indicated; the petition for rehearing is denied.