420 F.2d 1187
 73 L.R.R.M. (BNA) 2202
 NATIONAL LABOR RELATIONS BOARD, Petitioner, and
International Union, United Automobile, Aerospace
and Agricultural Implement Workers of
America (UAW), Intervenor,
v.
OLSON BODIES, INC., Formerly Grumman Allied Industries,
Inc., Respondent.
 No. 51, Docket 33048.
 United States Court of Appeals Second Circuit.
 Argued Oct. 3, 1969.
Decided Jan. 6, 1970.
 
 Leonard M. Wagman, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Herbert Fishgold, Atty., N.L.R.B., of counsel), for petitioner.
 Benjamin Rubenstein, New York City, for intervenor.
 William L. Dennis, New York City (Cahill, Gordon, Sonnett, Reindel & Ohl, and Henry G. Bisgaier, Jack L. Fox, Laurence T. Sorkin, Samuel M. Symonds, New York City, of counsel), for respondent.
 Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 In September 1966, the UAW filed a petition for a Board conducted election at respondent's Athens, N.Y. truck body plant. Respondent opposed this on the ground, no longer pressed, that the unit should include two plants in Michigan and Texas. The unit certified was
 
 
 2
 All production and maintenance employees employed at the Employer's Athens, New York, truck manufacturing plant, excluding office clerical employees, professional employees, guards, and supervisors as defined in the Act.
 
 
 3
 The Board denied a request for review, and an election was held on February 17, 1967.
 
 
 4
 The vote was exceedingly close. Two hundred and twenty votes were cast, with one hundred ten ballots in favor of the UAW and one hundred nine against. The remaining ballot, cast by William Davenport, was challenged by the Board agent on the ground that Davenport's name did not appear on the eligibility list. Respondent protested to the Regional Director, claiming that Davenport was a plant clerical and, therefore, his ballot should not have been excluded. Respondent also objected to the Regional Director's failure to comply with its request on February 15 that absentee balloting or home voting in the presence of a Board, employer and union representative should be allowed for 15 eligible employees who were out because of illness. (Apparently, however, 11 of the 15 did come to the polls and vote.) Respondent's final objection was based on alleged union misconduct.
 
 
 5
 The Regional Director took affidavits from Davenport and Loar, a Vice President of respondent, concerning the former's duties. Respondent was allowed to examine these and to submit four other affidavits as well as additional ones from Davenport and Loar. The Regional Director issued a supplemental decision and certification, wherein he sustained the challenge to Davenport as not being a production or maintenance employee in the truck manufacturing plant, overruled the other objections, and certified the union. Respondent sought review by the Board, pursuant to 102.67(c) and 102.69(c) of its Rules and Regulations, with respect to the sustaining of the challenge and the overruling of the objection concerning the ill employees. The facts about Davenport were set out in great detail, and apparently the affidavits were annexed.
 
 
 6
 On May 23, 1967, the Board denied the request as raising 'no substantial issues warranting review.' When respondent thereafter declined to bargain with the union, the General Counsel filed a complaint and moved for summary judgment. Opposing this, respondent sought a hearing on Davenport's status, reiterated its point concerning the ill employees, and repeated its initial objections with respect to the bargaining unit. The Trial Examiner recommended the grant of summary judgment; the Board sustained this and entered the bargaining order which it here seeks to enforce.
 
 
 7
 We deal first with respondent's objection on the score of the Board's failure to arrange for absentee or home voting by the four ill employees. In its brief, the Board properly recognizes its concern that all employees eligible to vote should have a fair opportunity to do so. The conduct of representation elections is the very archetype of a purely administrative function, with no quasi about it, concerning which courts should not interfere save for the most glaring discrimination or abuse. See, e.g., NLRB v. A. J. Tower Co., 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322 (1946). The company had made no request for absentee or home voting by the ill employees until two days before the election, although its telegram recited that many of them had been ill for at least a month and some for over six months. We cannot say that the Regional Director's refusal to supplement the usual manual ballot procedures in this election in a small up-state New York town was such a violation of the rights of the employees as to render judicial intervention appropriate. See International Tel. & Tel. Corp., Industrial Products Division v. NLRB, 294 F.2d 393 (9 Cir.1961); see also note 1 infra.
 
 
 8
 No useful purpose would be served by detailed recital of the extensive evidence concerning Davenport. Employed in 1950 as a production employee, he was transferred in 1962 to the shop's production control department where he worked with two other men. Biesel and Peters, who were classified as plant clericals after the representation hearing before the Regional Director. In 1964 he was moved to the office occupied by engineers and draftsmen who, it is agreed, are not in the bargaining unit. His principal function has been to make up bills of materials from information available in the engineering office. He is under the immediate supervision of Turner, an engineer, whereas Biesel and Peters are supervised by Simmons, who is also Turner's supervisor. The Regional Director permissibly found that 'his duties appear to be mainly in support of the engineering department personnel,' that his contacts with the production shop are through foremen, and that when he is on vacation, this part of his job is taken over by engineers or draftsmen. Some other bits and pieces of evidence pointed in one way, some in another.
 
 
 9
 We find particularly significant the position earlier taken by the company in the representation hearing. When the hearing officer asked who it contended were the production plant clericals, respondent's counsel did not name Davenport. On the other hand, there was extensive discussion about Biesel and Peters, and a third employee, Stacy. Considerable emphasis was placed on these employees' having their offices in the main production plant. Cf. NLRB v. Clarostat Mfg. Co., 216 F.2d 525, 528 (1 Cir.1954). It was thus quite natural that, while the decision and direction of election included these three in the unit, Davenport was not put in the eligible list. While this was not a consent election, as in NLRB v. Joclin Manufacturing Co., 314 F.2d 627, 633 (2 Cir.1963), where we said 'the Board was not making an independent determination' but 'was construing a contract,' there was no disagreement that only the production and maintenance employees were to be included and there was apparently no dispute that plant clericals were 'production and maintenance employees,' although there was debate whether Biesel, Peters and Stacy were plant clericals. If the matter were regarded as otherwise doubtful, the company's own position thus would tip the scale decisively against our upsetting the decision that Davenport was not a plant clerical and therefore not within the unit.
 
 
 10
 Relying on Joclin, supra, the company contends that, be all this as it may, it was entitled to an evidentiary hearing with respect to Davenport's duties. However, as examination of the opinion reveals, 314 F.2d at 632-634, 635 (on rehearing), the showing by the employer in that case concerning the need for a hearing was considerably more impressive than here. Respondent was given access to the affidavits taken by the Regional Director and opportunity, of which it fully availed itself, to submit additional material. No issue of credibility is involved; decision turned on the inference to be drawn from largely undisputed facts, and neither the Board nor we have been told of significant additional material that could be presented. Under these circumstances we perceive no error in he Regional Director's determination that there were no 'substantial and material factual issues * * * which can be resolved only after a hearing,' NLRB Rules and Regulations 102.69(c). See NLRB v. Sun Drug Co., 359 F.2d 408 (3 Cir.1966).
 
 
 11
 Respondent's final point is that because of the Board's refusal to review the Regional Director's decision and certification of election, remand is mandated by this court's recent decision in Pepsi-Cola Buffalo Bottling Co. v. NLRB, 409 F.2d 676 (2 Cir.), cert. denied, 396 U.S. 904, 90 S.Ct. 219, 24 L.Ed.2d 181 (1969). Although the writer of this opinion is inclined to doubt whether Pepsi-Cola gave adequate recognition to the 1959 amendment of 3(b) of the National Labor Relations Act empowering the Board to delegate various powers to a regional director, and the pertinent legislative history, it is unnecessary to consider that question here.
 
 
 12
 Accepting Pepsi-Cola we do not regard it as making remand automatic whenever the Board has declined to review a decision of a regional director under powers delegated to him pursuant to 3(b). This court was there dealing with an issue, whether distributors were employees or independent contractors, which, as the Board conceded, 'is difficult and requires a fine-drawn balancing of facts and law,' 409 F.2d at 679. See N.L.R.B. v. United Ins. Co., 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). The questions here were the refusal to arrange for absentee or home voting by ill employees and the correctness of the inference the Regional Director had drawn from largely undisputed facts relating to the work of a single employee. These are the very types of issues where the Board, like an appellate court, would properly defer to the judgment of the tribunal of first instance[1] -- and also the kinds of issues where the desire of Congress to help the Board with its workload, see remarks of Senator Goldwater, 2 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, 1856, would apply with peculiar force. We are convinced that a remand here for review of the Regional Director's decision would, in contrast to Pepsi-Cola, be 'an idle and useless formality,' NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766-767 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (opinion of Mr. Justice Fortas), accomplishing nothing save further delay.
 
 
 13
 Enforcement granted.
 
 
 14
 SMITH, Circuit Judge (concurring in the result):
 
 
 15
 While I do not join in my brother Friendly's doubts as to the soundness of Pepsi-Cola, I agree that under the circumstances here remand to the Board for consideration of the treatment of absentees and Davenport's status would be an 'idle and useless formality' and concur in the result here reached.
 
 
 
 [1]
 See e.g., Twenty-Seventh Ann.Rep. of NLRB 82 (1962):
 Election details, such as the time, place and notice of an election, are left largely to the regional director. The Board does not interfere with the regional director's broad discretion in making arrangements for the conduct of elections except where the discretion has been abused. (Citing Rohr Aircraft Corp., 136 N.L.R.B. 958 (1962).)