**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SMITH ALARM SYSTEMS and Central Station Alarm Company, Respondents.**

**No. 75–1113.**

United States Court of Appeals, Fifth Circuit.

Dec. 17, 1975.

---

Elliott Moore, Deputy Assoc. Gen. Counsel, Howard Perlstein, N. L. R. B., Washington, D. C., Elmer P. Davis, Director, Region 16, N. L. R. B., Fort Worth, Tex., for petitioner.

Wm. Woodburn, Dallas, Tex., for respondents.

Before TUTTLE, THORNBERRY and COLEMAN, Circuit Judges.

1. The election resulted in a 25–24 vote in favor of unionization by the IBEW; hence, had the challenged employee voted against the Union, there would have been a tie vote and the Union would not have received certification.

2. It should be noted that South was not literally included in the unit description agreed to by

TUTTLE, Circuit Judge:

This is an application for enforcement of an order by the Board finding respondent Smith Alarm Systems (hereinafter "the Company") guilty of an unfair labor practice in refusing to bargain with Local 59 of the International Brotherhood of Electrical Workers (hereinafter "the Union") following a representation election which the Union won by one vote.[1] The only issue before this Court is the Board's action in sustaining the Union's challenge to the ballot of George South, the Company having refused to bargain in order to test the Board's decision in the representation proceeding. The Board brings this action pursuant to § 10(e) of the National Labor Relations Act and argues that the Company's refusal to bargain violates §§ 8(a)(5) and (1) of the Act.

The Company sells, installs, services, and monitors burglar alarm systems and related products. In March 1974, the Union and the Company agreed to a Board representation election by a unit composed of the Company's boardroom operators, installers, maintenance, storeroom, and janitorial employees working at designated locations in Texas, including 108 Arthur Street, Fort Worth. One of the employees who cast a ballot in that election was George South, who, unlike the remainder of the Company's boardroom operators, is in sole charge of the Fort Worth branch boardroom and works alone in a downtown Fort Worth office about one mile from the Arthur Street facility where all the Company's Fort Worth installers and maintenance men are assigned.[2] South's ballot was challenged by the Union on the grounds that he did not constitute a proper member of the representation unit agreed upon, and the Board sustained the Union's challenge.

the parties since, although a "boardman" he was not at the company's location at 108 Arthur Street, Fort Worth, Texas. This was not a typographical error for there were other persons clearly within the unit at 108 Arthur Street.

■ Although South was not literally included in the description of the Unit, see fn. 2, it cannot be said that the parties necessarily effectively excluded him from the unit by stipulation by virtue of the description of the unit agreed to above. In *Shoreline Enterprises of America, Inc. v. NLRB,* 262 F.2d 933 (5th Cir. 1959), this Court held that the union and company were without the power to exclude from the voting list employees who have a common nexus with the employees allowed to vote. Thus, even if the stipulation was not meant to include South, he can still be included if he has the required common characteristics discussed below.

■ This Court has repeatedly recognized the fact that Congress has given the Board wide discretion in the making of a determination as to what is an appropriate bargaining unit. *See, e. g., N. L. R. B. v. Belcher Towing Co.,* 284 F.2d 118, 129 (5th Cir. 1960). Thus the question on appeal is whether the Board abused its discretion in finding that South was not "sufficiently concerned with the terms and conditions of employment in a unit," *Shoreline Enterprises of America, Inc. v. N. L. R. B.,* 262 F.2d 933, 944 (5th Cir. 1959), to give him the right to vote. In answering this question, we are required to examine the record as a whole to see if there is substantial evidence in it to support the Board's determination. *Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ We find that the record reveals ample evidence to sustain the Board's ruling on the voting unit issue. The various functions performed by South as sole boardroom operator in the branch office are for the most part duplicated by other employees in the Arthur Street office. That is to say that among several other employees there is someone who does one or more of the tasks performed by South so that these several employees altogether perform among them some 90% of the jobs carried on by South. However, there is no other individual employee whose total duties are comparable to those performed by South. His more routine duties, which are shared by a number of the Arthur Street boardroom operators, include monitoring tapes, handling dispatches, notifying the police when a burglary has occurred, and disbursing telephone line orders. Obviously the placing of all of these functions in a single employee is of itself a significant distinguishing characteristic of his job.

In addition to these functions, moreover, South's duties have gradually expanded since the start of his employment in 1962 to include functions not performed by boardroom operators. These duties, performed at the request of either the Company's operation manager or accounting department manager, include performing public relations work in connection with complaining customers, collection of delinquent accounts, and recommending the cancellation of bad accounts. Twice, when the Fort Worth maintenance supervisor was absent, South received telephone calls from at least two job applicants, gave them applications to complete, arranged truth verification tests, and turned them over to the maintenance supervisor.

Although it is clear from the record that South's duties cannot be characterized as supervisory in nature, the relevant test which the Board correctly applied here was that of "sufficiently concerned . . . with the terms and conditions of employment in a unit to warrant . . . participation in the selection of a collective bargaining agent." *Shoreline Enterprises, supra,* at 944. Given the wide variety of the types of duties performed by South, admittedly primarily as a result of his isolated location from the Company's other boardroom operators, and the uniqueness of at least some of those jobs (such as his public relations work with complaining customers), we cannot say the Board abused its discretion in finding South was not "sufficiently concerned" and in sustaining the Union's challenge to

South's ballot and certifying the results of the election.

The Order will be enforced.