NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GENERAL TUBE COMPANY,
Respondent.

No. 15594.

United States Court of Appeals
Sixth Circuit.

May 13, 1964.

Elliott Moore, N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Morton Namrow, Attys., N. L. R. B., Washington, D. C., on the brief, for petitioner.

Richard F. Hooker and James L. Stokes, Grand Rapids, Mich., Richard F. Hooker, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., on the brief, for respondent.

Before CECIL and EDWARDS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

EDWARDS, Circuit Judge.

The National Labor Relations Board petitions herein for enforcement of its order requiring respondent to engage in collective bargaining with a union. This union (the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO) had won a hairline victory in a consent election in respondent's plant by a vote of 33 to 32 and had been certified collective bargaining agent by the NLRB.

Before this court the entire argument pertains to the eligibility to vote of a female employee, Lois Ware, whose ballot was challenged by respondent company. The Regional Director subsequently ruled this ballot should be counted, and the parties appear to concede that its validity determined the one vote majority by which the union was certified.

The pertinent facts were stipulated by the parties as follows:

"(c) Lois Ware

"(1) Was employed by Respondent in the unit set forth in the Agreement for Consent Election, on the eligibility date set forth in the Agreement for Consent Election and

on August 21, 1962, the date of the NLRB election in this case.

"(2) Punched her time card 'in' at 7:00 a. m. and 'out' at 4:01 p. m. on August 21, 1962, and was paid as were all other employees on that shift on an eight-hour basis.

"(3) Notified her production foreman at about 8:30 a. m. on August 21, 1962, that August 21, 1962, would be her last day of work for the Respondent.

"(4) Entered the line to vote in the NLRB election at about 3:45 p. m., August 21, 1962, and after the polls opened cast a challenged ballot. Neither she nor any other employee engaged in production work after being released to vote.

"(5) Worked on the second floor of Respondent's plant on August 21, 1962, which was the same floor on which the voting in the aforementioned NLRB election took place.

"(6) After casting her ballot, punched 'out' at the time clock located on the first floor of Respondent's plant at 4:01 p. m., on August 21, 1962, and did not return to work for Respondent thereafter.

"(7) Except to the extent indicated above, worked in the manner and at the time scheduled to work on August 21, 1962."

On these facts the Regional Director held Lois Ware's vote should be counted, stating "the test for determining eligibility is the individual's actual status on the eligibility and election date[s]. It is immaterial that an employee gives notice of quitting prior to an election." He based his decision on prior NLRB decisions on similar circumstances. Otarion Listner Corp., 124 N.L.R.B. 880 (1959); Personal Products Corporation, 114 N.L.R.B. 959 (1955).

It appears from the stipulated facts and was conceded at appellate hearing that Lois Ware was paid by respondent, under the terms of the consent election,

for the time between 3:45 and 4:01 p. m. when she stood in line and cast her disputed ballot.

Respondent, however, contends that when Lois Ware announced her intention to quit, she thereby lost employee status; hence, her eligibility to vote. Respondent contends that this occurred at least by 3:45 p. m.—the moment she laid down her work and lined up to vote. Respondent also contends that this conclusion is a matter of law governed by the National Labor Relations Act § 2(2) [sic.] and 9(a), and not subject to determination by the Regional Director to whom the terms of the consent election gave "final and binding" authority to determine "the eligibility of voters."

■ We have examined both sections of the act cited (as well as others apparently more pertinent) and perceive no standard therein which as a matter of law deprives the National Labor Relations Board of power to declare an employee eligible to vote where she was on the eligible list and worked the full day of the election. See Personal Products, supra.

Actually respondent's argument is based on a line of cases where the employee whose status was in dispute did *not* work on election day and was *not* on the payroll at the moment he voted.

In Whiting Corp. v. N. L. R. B., 200 F.2d 43 (C.A. 7 1952), the disputed vote was cast on October 18, 1950, by an elderly employee who last worked for the employer September 26, 1950. He had told many witnesses that he never intended to work again and indeed did not. On this state of facts the 7th Circuit denied him employee status by reference to a standard of "reasonable expectation of employment within a reasonable time in the future." Whiting Corp. v. N. L. R. B., supra at 45. This standard has been used repeatedly by the NLRB when the challenged employee was one who was off the job on the date of the election. Massillon Aluminum Company, 27 N.L.R.B. 165; Western Union Tele-

graph Company, 32 N.L.R.B. 210 at 215; Van Brunt Mfg. Co., 45 N.L.R.B. 634 at 636; W. D. Byron and Sons of Maryland, Inc., 55 N.L.R.B. 172 at 174. The rationale for the standard used in these cases seems to be simply that no more objective standard was available.

Our research fails to disclose any instance (and none is cited to us) where this "reasonable expectation" standard has been applied in any situation where employee status was substantiated by work performed for the full day of the election—let alone where, as here, the employer, while challenging the right to vote, actually paid the employee for the time she spent voting.

As we have noted, this was a consent election where the parties in advance stipulated that "the determination of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters." Two ballots were challenged—one by the union and one by the company. Both were allowed to be counted by the Regional Director in a careful report on the challenges.

■ This court has set the standard of review of a Regional Director's rulings on eligibility in a consent election as being whether his findings are "arbitrary and capricious." N. L. R. B. v. Standard Transformer Co., 202 F.2d 846, 849 (C.A. 6 1952). See also N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 329, 67 S.Ct. 324, 91 L.Ed. 322 (1946). In a more recent 8th Circuit case the rule is stated:

"Thus the execution of the consent election agreement by the union and respondent is binding upon Parkhurst and the Regional Director's determination pursuant to that agreement is conclusive unless he acts arbitrarily or capriciously or out of line with Board policy or the Act's requirements." N. L. R. B. v. Parkhurst Manufacturing Com-

pany, 317 F.2d 513, 517 (C.A. 8 1963).

■ As we have indicated above, on this record we find no violation of the requirements of the National Labor Relations Act or of Board policy—and no indication that the disputed ruling of the Regional Director was "arbitrary or capricious."

Sometimes in the law a line of decision is as sharp as a knife edge. Here one day's work determined a vote, an election and a lawsuit. But the standard employed for decision appears to be a reasonable one—wholly consistent with the statute—and impartially administered.[1]

An umpire's decision cannot rightly be called "arbitrary" simply because the play was close.

The petition for enforcement of the order of the Board is granted.

---

1. The Regional Director's ruling on the Ware vote was based on an NLRB decision favoring eligibility in a similar factual situation where the vote was challenged by the union. See Personal Products Corporation, supra at 961.