**CHOC–OLA BOTTLERS, INC.,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 72–1424.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1973.

Decided May 14, 1973.

Claude M. Spilman, Jr., Indianapolis, Ind., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., NLRB, Washington, D. C., for respondent.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and KILEY, Circuit Judge.

HASTINGS, Senior Circuit Judge.

This case concerns the validity of a ruling of the National Labor Relations Board on the eligibility to vote in a representation election of an employee discharged for cause minutes before the scheduled time for voting. The case arises on the petition of the employer to review and set aside a Board order that it bargain with the bargaining representative whose majority status was determined by the vote of the discharged employee. The Board has made cross-application for enforcement of its order.

The Board found that Choc-Ola Bottlers, Inc. (the Company) violated §§ 8(a)(1) and (5) of the National Labor Relations Act, as amended, 29 U.S.C.A. §§ 158(a)(1) and (5), by refusing, on or about September 10, 1971, and at all times thereafter, to bargain collectively with the Retail, Wholesale and Department Store Union, AFL–CIO (the Union), which had been certified by the Board as the exclusive bargaining representative of the Company's employees. The Board entered an appropriate cease and desist order. The Board's order of May 22, 1972, is reported at 196 N.L. R.B. No. 162.

A brief summary of the procedural setting of this matter follows. On January 10, 1971, the Union filed a representation petition with the Board seeking certification as the exclusive bargaining representative of the Company's employees in an appropriate unit.[1] Pursuant to a Stipulation for Certification

---

1. The appropriate unit was stipulated: "All production and maintenance employees of the Employer at its Indian-apolis, Indiana plant including truckdrivers; * * *."

Upon Consent Election,[2] an election by secret ballot was conducted on February 19, 1971, between the hours of 4:00 and 4:30 P.M. The result of this election was that six votes were cast for the Union, six votes were cast against the Union and one ballot, that of William E. Viles, was challenged by the Company. Since the challenged vote was determinative of the election, the Board's Regional Director conducted an administrative investigation and made a recommendation that the challenge to the ballot be sustained. This recommendation was thereafter reviewed and reversed by the Board, and the Regional Director was directed to open and count the challenged ballot and certify the results of the election. 192 N.L.R.B. No. 182 (April 27, 1971). The ballot of Viles was opened and found to be a vote for the Union, so the Union was certified by a vote of seven to six. Subsequent administrative procedures had consequences adverse to the Company. The end result was the instant matter now before our court, which has jurisdiction under 29 U.S.C.A. §§ 160 (e) and (f).

The facts are not in serious dispute. The Company is a small Indianapolis-based corporation which manufactures, bottles and distributes regionally a carbonated soft drink known as "Choc-Ola." At the time in question the Company employed 13 people in the representation unit. Mr. Harry Normington, Sr., the inventor of the manufactured product, was president and in active charge of the business of his company. Viles was employed by the Company as an over-the-road truck driver. At 3:57 P.M. on the day of the representation election, Normington discharged Viles for cause.

Viles presented himself to vote when the polls opened at 4:00 P.M. His ballot was promptly challenged by the Company observer.

Viles' discharge occurred under the following circumstances. The drivers customarily picked up their trucks at the Company's premises and left on their delivery routes early in the morning, several hours before the Company's management personnel arrived to begin work. It was likewise customary for the drivers to finish their routes in the early or mid-afternoon, at which time they would return their truck to the Company's premises. On the afternoon preceding the election, the Company was informed that one of its drivers had on two occasions been seen delivering truck tires to a "truck-stop" in Galena, Ohio. Viles was the only driver employed by the Company who answered the physical description of this truck driver. He had already left work for the day. Therefore, a note was placed on his truck requesting him to report to Normington when he completed his scheduled route the following day, the day of the election.

Upon his return to the Company premises the day of the election at 3:31 P.M., Viles did not report to Normington but remained near his truck in the garage area. After two additional requests to report, Viles reported to Normington at 3:50 P.M. Normington, knowing that the truck tires had been missing from the Company inventory, was not satisfied with Viles' explanation and found reason to believe that Viles had stolen the tires from the Company, sold them and kept the money for his own use. Normington then and there discharged Viles. All of this happened be-

2. The Stipulation provided, *inter alia*: "Said election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the applicable procedures and policies of the Board."

The Stipulation defined "Eligible Voters," in relevant part to be: " * * * those employees included within the Unit described below, who were employed dur-

ing the payroll period * * * [ending Wednesday, February 3, 1971], including employees who did not work during said payroll period because they were ill or on vacation or temporarily laid off, * * * but excluding any employees who have since quit or been discharged for cause * * * and who have not been rehired or reinstated prior to the date of the election * * *."

fore the polls were opened by the Board agent conducting the election.[3]

The general issue for review is whether the Board properly found the Company violated §§ 8(a)(1) and (5) of the Act by refusing to bargain with the Union certified to represent its employees following a Board-conducted election. However, the key subissue is whether the Board erred in overruling the Company's challenge to Viles' ballot, a decision which resulted in the Board's certifying the majority status of the Union.

The Board contends that it acted within its discretion in overruling the Company's challenge to Viles' ballot. In the instant case the Board says it adhered to a long-standing Board rule that an employee is eligible to vote in a Board election if he was employed during the eligibility payroll period and on the day of the election. See Macy's Missouri-Kansas Division v. NLRB, 8 Cir., 389 F.2d 835, 842 (1968), and a number of Board-cited cases.[4] Since Viles satisfied both of these requirements, the Board holds he was eligible to vote. The circumstance that Viles put in a full day's labor on a regular workday (the election day) and that his discharge came at the end of his workday and at the end of the workweek is reason enough to satisfy the Board that Viles' eligibility to vote was not destroyed by the fact that he was discharged three minutes before the polls were to open.

The Board further argues that to accept the Company's position would be to "fractionalize" the day of the election and would lead to administratively unworkable results. It suggests other situations where the Board has refused to fractionalize a critical day.[5] The Board states that the fact that Viles did not have a continuing interest in the outcome of the balloting was immaterial and notes that it has uniformly held that an employee employed on the date of the election is eligible to vote despite an intention to quit after the election.[6]

The Company counters with the proposition that since the basic question is whether Viles was eligible to vote, this determination must first be made by reference to the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq. Section 8(a)(5), 29 U.S.C.A. § 158 (a)(5), provides that it is an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section [9(a)]." Section 9(a), 29 U.S.C.A. § 159(a), provides that the bargaining representative must be chosen "by the majority of the employees in a unit appropriate for such purposes." Here is an explicit recognition of the right to majority rule by those who are employees at the time they vote.

The Company notes that in the cases cited by the Board in support of its general standard that a person is eligible

---

3. These facts are consistent with those found by the Regional Director, and the Board here concedes that Viles was discharged for cause. According to an affidavit of Normington, Viles admitted a week after his discharge "that the 3 tires involved were the property of Choc-Ola, and that he had taken them from the company without authorization or payment."

4. Greenspan Engraving Corp., 137 N.L.R.B. 1308, 1309 (1962); Gulf States Asphalt Co., 106 N.L.R.B. 1212, 1214 (1953); Reade Mfg. Co., 100 N.L.R.B. 87, 89 (1952); Bill Heath, Inc., 89 N.L.R.B. 1555, 1556 (1950).

5. Plymouth Towing Co., 178 N.L.R.B. 651 (1969); West Texas Equip. Co.,

142 N.L.R.B. 1358, 1359–1360 (1963); Deluxe Metal Furniture Co., 121 N.L.R.B. 995, 999 (1958). The Board also cites NLRB v. General Tube Co., 6 Cir., 331 F.2d 751 (1964), and provisions for computing time in various rules of procedure.

6. Personal Products Corp., 114 N.L.R.B. 959, 961 (1955); Whiting Corp., 99 N.L.R.B. 117, 122 (1952), rev'd on other grounds, 7 Cir., 200 F.2d 43 (1952). But see Fairview Hosp., 174 N.L.R.B. 924, 928 (1969), enf'd, 7 Cir., No. 18151 (October 20, 1970), where the Board ruled ineligible an employee whose discharge was effected on the day of the election. The employee's timecard was pulled before he reported for work.

to vote if he is an employee on the eligibility date and on the election date there has never been any further question whether the voter was employed at the time he voted. It says that we are faced with a case of first impression in considering the question whether an employee discharged for cause on the day of a representation election is eligible, later that day, to cast his vote for a bargaining representative.

■ We agree with the Company that the question of Viles' eligibility to vote in the election is a pure question of law, dependent entirely on whether a person in Viles' situation can be said to be an employee within the meaning of the Act. Therefore, there is no occasion for the Board to exercise its discretion in this matter. We need not dwell on established law recognizing that the Board has wide discretion in supervising the election process and in resolving questions arising during the course of representation proceedings. *See, e. g.*, NLRB v. A. J. Tower Co., 329 U.S. 324, 330–331, 67 S.Ct. 324, 91 L.Ed. 322 (1946); National Van Lines, Inc. v. NLRB, 7 Cir., 273 F.2d 402, 407 (1960).

■ Viles was discharged for cause prior to voting. His employment relationship had not been terminated by reason of a current labor dispute or an unfair labor practice.[7] He was no longer sufficiently concerned with the terms and conditions of employment in the unit to warrant his participation in the representation election.[8] He no longer had a community of interest with other employees in the unit.[9] He no longer had any reasonable expectation of reemployment.[10] When Viles was discharged for cause, he was removed from the payroll, would not perform future services, would not be receiving wages except for past services and was not restricted as to other employment.

All these factors are economic and policy considerations placing Viles well outside the ambit of the term "employee" as it is used in the Act. See Allied Chemical Workers, Local 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 168, 92 S.Ct. 383, 392, 30 L.Ed.2d 341 (1971). As Mr. Justice Brennan, speaking for six of the seven members of the Court, said in the course of holding that retirees are not employees under the Act: "No decision under the Act is cited, and none to our knowledge exists, in which an individual who has ceased work without expectation of further employment has been held to be an 'employee.' " *Id.* Furthermore, the Court held that "the term 'employee' is not to be stretched beyond its plain meaning embracing only those who work for another for hire." *Id.* at 166, 92 S. Ct. at 391. There can be little doubt that Viles did not fit this mold at the time he cast his challenged ballot. His relationship with the Company had by that time been definitely and permanently severed. The Act gives no warrant to the Board's effort to transform Viles, who was, according to the "plain meaning" of words, a "former employee," into a full-fledged "employee" with the right to determine the representation rights of his 12 former colleagues. In a case like the present one, it is apparent that the discharged employee's vote will be directed more toward a result that seems to him in the employer's worst interest than to one in his former colleagues' best interests.

This leaves only the Board's argument that the result we reach will be administratively unworkable because it will somehow "fractionalize" the election day. The unworkability of one option may well justify an agency in adopting the other

---

7. Proscribed by §§ 2(3) and 9(a), 29 U.S. C.A. §§ 152(3) and 159(a).

8. Shoreline Enterprises of America, Inc. v. NLRB, 5 Cir., 262 F.2d 933, 944 (1959).

9. NLRB v. Belcher Towing Co., 5 Cir., 284 F.2d 118, 121 (1960).

10. Whiting Corp. v. NLRB, 7 Cir., 200 F.2d 43, 45 (1952), cited in note 6, *supra*. See also Lake City Foundry Co. v. NLRB, 7 Cir., 432 F.2d 1162, 1169 (1970).

of two options when the governing statute permits the adoption of either. But, as we have held, the approach for which the Board contends is not open to it. Even if the result proves inconvenient to administer, the Board must perform the duties Congress has imposed upon it.

We do not, however, concede that this result will prove unworkable. The Board has long enforced the rule that a voter is eligible to cast a ballot in a representation election if he is an employee both on the day of the election and during the eligibility payroll period.[11] In addition to these requirements, we now recognize the requirement, grounded in the Act, that he still be an employee at the time he attempts to vote. This holding is entirely consistent with the holdings of all the cases cited by the Board [12] and would not have changed the result in a single one of them.

For the foregoing reasons, we conclude that Viles' vote should not have been counted, that the Union should not have been certified as bargaining representative and that the Company was under no duty to bargain collectively with the Union. Accordingly, we grant the Company's petition to review, set aside the Board's order and decline to enforce it.

Review granted, order set aside and enforcement denied.

KILEY, Circuit Judge (dissenting).

I respectfully dissent.

I agree that the "key sub-issue" is whether the Board erred in overruling the Company's challenge to Viles' ballot.

In my opinion "the matter of voter eligibility rests primarily with the Board and . . . in its expertise and experience in handling labor-management relations, it should decide this issue, subject, of course, to right of review." Macy's Missouri-Kansas Division v. NLRB, 389 F.2d 835, 846 (8th Cir. 1968). I think in reviewing the Board's decision on Viles' eligibility to vote we are limited to deciding whether the Board abused its discretion.[1]

The majority opinion rests upon rules distilled from several cases: Viles was no longer sufficiently concerned with the unit's employment conditions under Shoreline Enterprises of America, Inc. v. NLRB, 262 F.2d 933, 944 (5th Cir. 1959); had no community of interest under NLRB v. Belcher Towing Co., 284 F.2d 118, 121 (5th Cir. 1960); and no longer had any reasonable expectation of reemployment under Whiting Corp. v. NLRB, 200 F.2d 43, 45 (7th Cir. 1952), and Lake City Foundry Co. v. NLRB, 432 F.2d 1162, 1168–1169 (7th Cir. 1970).

None of those cases concerned an employee who was discharged for cause after he finished his work the day of the election. In *Shoreline* the question of eligibility depended on whether the challenged votes were in the unit involved. In *Belcher* the question was whether a parttime employee had sufficient continuity to gain a community of interest.

In *Whiting* the challenged voter quit two weeks before the election because he was unable physically to do the work, and said he would not return. This court set aside the Board's finding of eligibility as not supported by adequate proof. In *Lake City* this court decided that the record did not support the Board's finding that Kent was an employee when demand for recognition by a union was made because he had—a half hour prior to the demand—been told of the company decision to discharge him, and his final check had been prepared. This court, on authority of *Whiting,* said Kent could not have had any reasonable expectation of further employment.

Viles was discharged election day after completing his work and, presumably, being paid, and only three minutes before the voting began. The day before the election the Company had "strong suspicion" that Viles stole Company tires

---

11. *See* cases cited in note 4, *supra.*

12. *See* cases cited in notes 5 & 6, *supra.*

1. There is no argument made that Viles' misconduct forfeited his voting right, if he was otherwise eligible.

and sold them for his own profit. Instead of firing Viles on the day he received that information, the president, Normington, left a note on Viles' truck to report *after* he had "completed his scheduled route" the next day, the day of the election. This court's opinion states no good reason why Viles could not have been fired before election day. The Company must have known where he lived and could have communicated with him. The Company seeks to excuse its failure to discharge him the morning of election day on the ground that drivers left the premises several hours before management personnel arrived. This is unpersuasive. It is true that Viles did not report after he completed his work election day, as the note directed him to do. But he was on the premises after 3:31 p. m. and was not discharged until 3:57 p. m. He was requested to report twice after 3:31 p. m. but did not do so until 3:50 p. m.

In *Macy's* the Eighth Circuit considered the question of voting rights of strikers and their permanent replacements employed after the strike began. The court thought both were entitled to vote since both had a legitimate interest in their jobs, even though the strikers were not employed on the day of election nor the replacements employed on the initial eligibility date. And in NLRB v. General Tube Co., 331 F.2d 751, 752 (6th Cir. 1964), the Sixth Circuit found "no standard . . . which as a matter of law deprives the . . . Board of power to declare an employee eligible to vote where she was on the eligible list and worked the full day of the election," even though she had announced the morning of the election her intention to quit and had been paid for the day ending at 4:01 p. m., at which time she stood in line to vote. The court discussed this court's *Whiting* decision denying employee status by reference to the Board's then (1964) standard of "reasonable expectation of reemployment within a reasonable time in the future." The Sixth Circuit observed that the rationale for the standard seemed to be "simply that

no more objective standard was available." General Tube 331 F.2d at 753. The court stated that its research disclosed no instance where the *Whiting* standard was applied where the employee worked for the full day of election.

The general rule is that to be eligible to vote in an election one must be employed during the current payroll period and on the day of election. *Macy's*, 389 F.2d at 842. In *Macy's* the question was whether three new employees not employed during the payroll period were eligible to vote. The court noted the "difficult and perplexing chore" of determining voting rights in connection with an economic strike. The court said that both the strikers and their replacements had an interest in their jobs and in the outcome of the election.

There is of course no question of eligibility of economic strikers or their replacements here. The *Macy's* decision, however, discusses, in considerable detail, the tortuous path Board decisions and Congressional policy have taken in resolving voter eligibility. pp. 843–846. The *Macy's* decision shows the lack of rigidity in applicable standards of eligibility to the stage where, despite the general rule, economic strikers with no expectation of reemployment are eligible to vote and the permanent replacements for them are also eligible. Thus the general rule does not always hold with respect to the eligible payroll period or to the day of election. Viles, however, satisfied both parts of the general rule.

It seems therefore that neither employment on the day of election nor on the eligibility date has been rigidly required for employee eligibility to vote. Presumably the Board in deciding Viles' eligibility was well acquainted with the variation in applicable standards and with the history of voter eligibility showing a lack of rigidity in applying the rules relied upon by the majority. The Board's expertise has been historically relied upon in adjusting application of the eligibility rules to the needs of varied factual situations. In the case before us I see no abuse of discretion in the

Board's finding that Viles was eligible to vote even though he could not expect to be reemployed by the Company, since he cannot be said to have no concern with employment conditions at the Company or to have no interest in the outcome of the election, and he had worked and was paid for a full day on election day.

I would enforce the Board's order.