SAINT–GOBAIN INDUSTRIAL
CERAMICS, INC.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 01–1365.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 1, 2002.

Decided Nov. 26, 2002.

Petition denied.

Alisa L. Pittman argued the cause for petitioner. With her on the briefs was Stanford G. Wilson.

John R. McIntyre, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the briefs were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Robert J. Englehart, Supervisory Attorney. Charles P. Donnelly, Supervisory Attorney, entered an appearance.

Before: RANDOLPH and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Saint–Gobain Industrial Ceramics, Inc. appeals the decision of the National Labor Relations Board that it violated § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) & (1) (2000), by refusing to bargain with the United Steelworkers of America, AFL–CIO, which the Board had certified as the exclusive unit representative. Attempting to come within an exception to the Board's rule that "once a ballot has been cast without challenge and its identity has been lost, its validity cannot later be challenged" on post-election challenges to voter eligibility, *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 331–32, 67 S.Ct. 324, 91 L.Ed. 322 (1946), Saint–Gobain contends that the Board erred in certifying the Union because the Union knew prior to the election, and suppressed the fact, that an employee who cast a ballot in its favor was ineligible to vote. Under the *Tower* exception, the Board's decision in a representation proceeding may be challenged in an unfair labor practice proceeding "where the Board's agents or the parties benefiting from the Board's refusal to entertain the issue know of the voter's ineligibility and suppress the facts." *Id.* at 333, 67 S.Ct. at 329 (citation omitted). Because Saint–Gobain failed to present evidence that the Union knew and suppressed information about an ineligible voter, the Board reasonably overruled its objection to the Union's certification as an impermissible post-election challenge. Accordingly, we deny the petition for review and grant the Board's cross-application for enforcement of its order.

## I.

Saint–Gobain is located in Niagara Falls, New York, and manufactures industrial ceramics. On July 13, 2000, the Union filed a petition with the Board for a representation election at Saint–Gobain. Pursuant to a Stipulated Election Agreement approved by the Board's Regional Director, a secret ballot election was conducted on August 23, 2000, for all full-time and regular part-time production and maintenance employees and laboratory technicians at Saint–Gobain's Niagara Falls facility. Of approximately 36 eligible voters, 35 cast bal-

lots, with 18 in favor of the Union and 17 against.

On August 28, 2000, Saint–Gobain filed an objection to the election with the Board's Regional Director on the ground that the Union had unlawfully attempted to dilute the promanagement vote. Saint–Gobain claimed that it had learned that one of its former employees, Donald Hotaling, who voted on August 23, had begun working a full-time day shift on August 21, as a registered nurse for Mount St. Mary's Hospital and Health Center. Hotaling was on vacation leave for the week of August 21; he resigned his employment with Saint–Gobain on August 25, two days after the election. Under an established policy, Saint–Gobain maintained, Hotaling was obligated to report his outside employment and had not done so. Saint–Gobain asserted that had it known of Hotaling's new job, it would have discharged him before the election. Saint–Gobain further stated that the day after the election two of its employees had informed a supervisor that the Union was advising Hotaling not to resign until August 30, when Saint–Gobain would no longer be able to file objections to the election.

The Regional Director found that Hotaling was on approved vacation leave from Saint–Gobain during the week of the election, he was employed in the unit during the payroll eligibility period, he worked for Saint–Gobain through the election date, and he had voted without challenge. In light of Board precedent, the Regional Director concluded that the objection was without merit and recommended to the Board that the objection be overruled and the Union certified. The Regional Director viewed Saint–Gobain's argument that it would have discharged Hotaling had it known of his acceptance of another full-time position to be "in essence a postelection challenge in the guise of an objection." *Saint–Gobain Indus. Ceramics, Inc.,*

N.L.R.B. Third Region, Regional Director's Report on Objections, Case 3–RC–11014, at 4 (Sept. 18, 2000). The Regional Director rejected Saint–Gobain's assertion that the Union had attempted to "pack" the election unit, as the employer had in *North Atlantic Medical Services,* 329 N.L.R.B. 85, 86, 1999 WL 713975 (1999), because the Union had no such capacity nor control over when Hotaling disclosed his new employment or submitted his resignation. Finally, even if the Union had been aware of Hotaling's acceptance of new employment, the Regional Director noted that "the Board does not require parties in an election campaign to make affirmative disclosures of fact." *Id.* at 6 (citing *Florida Mining & Materials Corp. v. Truck Drivers Union No. 512,* 198 N.L.R.B. 601, 601–02, 1972 WL 5060 (1972), aff'd, *Florida Mining & Materials Corp. v. NLRB,* 481 F.2d 65, 69 (5th Cir. 1973)). The Board adopted the Regional Director's findings and recommendation and certified the Union as the exclusive bargaining representative of the unit.

Thereafter, the Union made a request of Saint–Gobain to meet for the purpose of negotiating a collective bargaining agreement. When Saint–Gobain refused to recognize or bargain with it, the Union filed an unfair labor practice complaint with the Board. The Acting General Counsel, in turn, filed a complaint alleging that Saint–Gobain's refusal to recognize and to bargain with the Union violated § 8(a)(5) and (1) of the Act. In its answer, Saint–Gobain admitted its refusal to bargain but claimed that the Union had been improperly certified. Acting Counsel filed a motion for summary judgment, and the Board issued an order to show cause why the motion should not be granted. In response, Saint–Gobain challenged the certification on the grounds it raised in its objection to the election in the representation proceeding. The Board granted sum-

mary judgment, finding that Saint–Gobain's representation issues "were or could have been litigated in the prior representation proceeding," and that Saint–Gobain had failed either to identify newly discovered or previously unavailable evidence to be offered at a hearing or to allege any "special circumstances" that would require the Board to reexamine its representative decision. *Saint–Gobain Indus. Ceramics, Inc.*, 334 N.L.R.B. No. 60, at 1, 2001 WL 764351 (July 3, 2001).

## II.

On appeal, Saint–Gobain contends the Board's decision that it violated § 8(a)(5) and (1) of the Act should be reversed and the election set aside because the Board erred in overruling its objection, based on the Union's concealment of Hotaling's ineligibility to vote, on the ground the objection did not fall within the *Tower* exception. Saint–Gobain challenges two factual findings of the Board in the representation proceedings: that there was no evidence first, that the Union suppressed evidence of Hotaling's ineligibility to vote, and second, that Hotaling was, in fact, ineligible to vote.

■ Our jurisdiction to review the representation proceeding is limited to deciding whether to enforce, modify, or set aside the unfair labor practice order of the Board. *See* 29 U.S.C. § 159(d) (2000); *Family Serv. Agency San Francisco v. NLRB*, 163 F.3d 1369, 1373 & n. 2 (D.C.Cir.1999). Our review of the Board's unfair labor practice finding is for substantial evidence in the record as a whole. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The court will uphold the Board "if its conclusions are based upon reasonable inferences drawn from the facts as it found them." *Terrace Gardens Plaza, Inc. v. NLRB*, 91 F.3d 222, 225 (D.C.Cir.1996); *see Sitka Sound Seafoods,*

*Inc. v. NLRB*, 206 F.3d 1175, 1178 (D.C.Cir.2000).

■ In overruling Saint–Gobain's objection to the election, the Board noted that there was no evidence that prior to the election the Union had "encouraged or induced [Hotaling] to conceal his acceptance of employment with another employer." *Saint–Gobain Indus. Ceramics, Inc.*, Case 3–RC–11014, slip op. at 1 n.1 (Oct. 25, 2000). Saint–Gobain maintains, citing *William R. Whittaker Co.*, 94 N.L.R.B. 1151, 1154–55, 1951 WL 10578 (1951), that it presented evidence revealing that, as a result of the Union's suppression of information, Saint–Gobain was denied a reasonable opportunity to exercise its right to challenge the election. Saint–Gobain points to three affidavits of its employees and two proffers of evidence from its managers to show that the Union suppressed evidence of Hotaling's ineligibility to vote in the election. An examination of this evidence reveals that it does not show that the Board's findings in the representation proceeding were unsupported by substantial evidence.

The affidavit of Dan Polocko states that the day after the election the Union told Saint–Gobain employees to give Hotaling the message that he should not resign until August 28, 2000, or to let the company terminate him for not showing up for work after his vacation ended. The affidavit of Anthony Fiore refers to an anonymous email message on the evening of the election inviting employees to Hotaling's going-away party and welcoming them as members of the Union. Both affidavits, on their face, refer to Union actions after the election took place. Hence, they do not establish either that before the election the Union knew about Hotaling's new job or that the Union did anything to conceal or to encourage Hotaling to conceal his employment at Mount St. Mary's from Saint–

Gobain. In fact, the affidavits suggest that before the election Hotaling told his co-workers about his new position and that Saint–Gobain employees knew he would resign after the election. The proffered testimony of Supervisor David Rumpf essentially repeats the substance of Dan Polocko's affidavit, adding only that Hotaling had decided to arrange his vacation time in a way that allowed him to start his new job and to vote in the election at Saint–Gobain, and that the Union's advice that Hotaling postpone his resignation arose out of a concern that the election might be invalidated. An affidavit of Eric Siegmann and the proffered testimony of Plant Manager George Davis add nothing material. At most, then, the evidence shows that Hotaling was planning to leave his job at Saint–Gobain, had taken vacation leave so he could begin his new job before he resigned from Saint–Gobain, and after the election the Union was concerned that the timing of his resignation might affect the validity of its one-vote margin of victory. This is a far cry from evidence showing Union knowledge prior to the election of Hotaling's ineligibility to vote or its suppression of the information.

But even assuming that Saint–Gobain's evidence was sufficient to show that prior to the election the Union knew of Hotaling's employment at Mount St. Mary's, the evidence still fails to show that Hotaling was, by virtue of his new job, ineligible to vote on August 23, much less that the Union knew of, and suppressed information of, his ineligibility. To the contrary, the parties' Stipulated Election Agreement provided that "eligible voters shall be unit employees employed during the payroll period for eligibility, including employees who did not work during that period because they were ... on vacation ... who appear in person at the polls." Saint–Gobain does not dispute that Hotaling was employed in the unit during the payroll eligibility period and on the date of the election. These requirements are sufficient, the Board has concluded, to ensure the requisite community of interest with unit employees. *See Sitka,* 206 F.3d at 1178 (citing *Saltwater, Inc.,* 324 N.L.R.B. 343, 343 n. 1, 1997 WL 568727 (1997)). So long as these eligibility requirements are satisfied, an employee is eligible to vote even if the employee intends to quit his employment after the election and does so. *See NLRB v. Res–Care, Inc.,* 705 F.2d 1461, 1471 (7th Cir.1983); *Harold M. Pitman Co. v. Stenten,* 303 N.L.R.B. 655, 655 & n. 3, 1991 WL 132779 (1991); *Computed Time Corp.,* 228 N.L.R.B. 1243, 1250–51 (1977); *Pers. Prods. Corp.,* 114 N.L.R.B. 959, 961, 1955 WL 13295 (1955).

Saint–Gobain attempts to distinguish Board precedent on the ground that Hotaling had abandoned his employment prior to the election, as his conduct indicated that he had no reasonable expectation of returning to work after he voted in the election, and thus he did not share a community of interest with unit employees. Yet in *Reidbord Brothers Co.,* 99 N.L.R.B. 127, 128–29, 1952 WL 11272 (1952), the Board found an employee was eligible to vote even though prior to the election she had started working for a second employer and had told the first employer that she did not intend to return to her former job. *Id.* at 128–29. After so informing the first employer, the employee did return to work at her former job for one day, then did not show up for work for the next three days, but on the fourth day showed up for work and voted in the election and then quit the next day. *Id.* at 129. Further, applying the vacation exception in *Amoco Oil Corp. v. Shaw,* 289 NLRB 280, 280, 1988 WL 213755 (1988), the Board found an employee who was on the payroll on the date of the election was eligible to vote although the employee was on vacation at the time of the election and before the election had taken all the necessary steps to retire.

Thus, in *Reidbord* and *Amoco*, as is true of Hotaling, the employee was eligible to vote because the "essential element in determining an employee's eligibility to vote" is, in the Board's view, the employee's "status on the eligibility payroll date and on the date of the election. It is without controlling significance that an individual employed on those dates may have intended to quit, or actually did quit, shortly after the election." *Reidbord,* 99 N.L.R.B. at 129 (citations omitted); *see Res–Care,* 705 F.2d at 1471. Saint–Gobain's reliance on *Friendly Ice Cream Corp. v. NLRB,* 705 F.2d 570, 581 (1st Cir.1983), is misplaced; Hotaling's relationship to the bargaining unit is not comparable to that of a temporary seasonal employee for he was employed on the date of the election.

■ Saint–Gobain's reliance on its established "notice" policy fares no better. The policy provides that employees must notify Saint–Gobain of outside employment that would interfere "in any way" with the performance of their duties. According to Saint–Gobain, had it known of Hotaling's new job, it would have fired him before the election in accordance with its policy. Like the employee in *Choc-Ola Bottlers, Inc. v. NLRB,* 478 F.2d 461, 464 (7th Cir.1973), who was discharged on the election date for violating company policy and theft, Hotaling, Saint–Gobain maintains, would no longer have had a community of interest with other employees in the unit. There are several flaws in this argument. First, at the relevant time there was no necessary incompatibility between the two jobs. As of the date of the election, Hotaling was on approved vacation leave, and to that extent his new job at Mount St. Mary's did not necessarily conflict with his status at Saint–Gobain. Saint–Gobain does not suggest that anything prevented Hotaling from changing his mind and deciding at the end of his vacation leave to quit his new job in favor of remaining at Saint–Gobain. *Cf. Willmar Elec. Serv.,*

*Inc. v. NLRB,* 968 F.2d 1327, 1329–30 (D.C.Cir.1992). Second, Saint–Gobain's policy appears to require reporting only when the outside employment interferes with an employee's performance of his duties at Saint–Gobain. No such conflict occurred prior to the election while Hotaling was on vacation, and when Hotaling was scheduled to return from vacation on August 28, had he not resigned on August 25, nothing in the policy required Saint–Gobain to discharge him. Third, even if Saint–Gobain might have discharged Hotaling before the election, it did not do so. What Saint–Gobain effectively seeks is a retroactive termination to make Hotaling ineligible to vote, a result that would directly undermine the Board's reason for barring post-election challenges to voter eligibility. Were the Board in the unfair labor practice proceeding to have entertained Saint–Gobain's objection to the Union's certification, the objection process would become a hunt for employees who could have been discharged prior to the election but were not. *See Tower,* 329 U.S. at 332–35, 67 S.Ct. at 328–30. We have no occasion to decide whether a union's failure to report a clear violation of an employment policy that would clearly result in automatic and immediate termination of an employee would constitute suppression of information and entitle an employer to make a post-election challenge. Here, there was insufficient evidence to show either that the Union knew about Hotaling's new job and suppressed the fact, or that Saint–Gobain's policy would require termination of Hotaling for acceptance of the new job and the Union knew of this policy.

■ Finally, Saint–Gobain asserts that Hotaling was ineligible to vote because he was a "salt," i.e., a paid union organizer, *see 299 Lincoln Street, Inc. v. Lincoln Employees Union,* 292 N.L.R.B. 172, 180, 1988 WL 214290 (1988), and thus did not

share a community of interest with the other unit employees. Although Saint–Gobain stated in its objection to the election that Hotaling was "an open Union supporter," this is not the same as claiming that Hotaling was paid by the Union and working at Saint–Gobain for the purpose of organizing the unit. *See NLRB v. Town & Country Elec., Inc.,* 516 U.S. 85, 96–97, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995); *Willmar,* 968 F.2d at 1329. Because the Board had no opportunity to address this claim, it is not properly before the court. *See* 29 U.S.C. § 160(e) (2000); *Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 665–66, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982).

Accordingly, because the Board acted reasonably in overruling Saint–Gobain's objection to the election as an impermissible post-election challenge of Hotaling's eligibility, and Saint–Gobain presents no other challenge to the Board's unfair labor practice decision, we deny the petition for review and grant the Board's cross-application for enforcement of its order.